IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH SCOTT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INDYMAC BANK, FSB; CAPITAL MORTGAGE )<br>SERVICES, LLC; TITLE SHIELD, LLC; JEFF )<br>GOLDING; EVAN M. SILVERMAN, and JOHN )<br>DOES 1-5, )<br>)<br>Defendants. ) | No. 03 C 6489<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Scott has brought an amended three-count putative class action complaint against IndyMac Bank, FSB ("IndyMac"); Capital Mortgage Services, LLC ("CMS"); Title Shield, LLC ("TS"); Jeff Golding; Evan M. Silverman; and John Does 1-5, for recision of a mortgage loan and damages. Specifically, plaintiff alleges individual and class violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. against IndyMac and the John Doe defendants (Counts I and II) and violations of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2 against all defendants (Count III). All defendants have moved to dismiss Count III, while IndyMac has also moved to dismiss Counts I and II for failure to state a claim. For the reasons set forth below, both motions are granted.

## FACTS

As alleged in the complaint, plaintiff hired CMS, a mortgage broker, to find financing to refinance her home and to consolidate her debts. CMS arranged financing with IndyMac, and the loan closed on March 15, 2002. CMS arranged for title insurance from TS, which is owned and

managed by defendants Golding and Silverman, who also own and manage CMS. Plaintiff was charged a total of $966.00 for title insurance and related charges, comprised of: (1) $200.00 for a title search, paid to Lakeshore Title Agency; and (2) $766.00 for title insurance and endorsements from TS. Chicago Title Insurance Company quotes a basic financing rate of $479.80 for a $79,000 loan, with a refinancing rate of 75% of the basic rate. Plaintiff was also charged $49.50 for the recording of the mortgage and $34.50 for the recording of a release. The actual cost to record the mortgage was $45.50, while the release was actually recorded by plaintiff's prior lender.

## DISCUSSION

IndyMac has moved to dismiss Counts I and II of plaintiff's complaint for failure to state a claim under TILA. The consideration of such motion is restricted to the pleadings, which include the complaint and any attached exhibits. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Accordingly, "where a plaintiff attaches documents to [her] complaint and relies upon the documents to form the basis of a claim or part of a claim, dismissal is appropriate if the document negates the claim." Id. at 754.

In Counts I and II, plaintiff seeks recision of the mortgage, alleging that IndyMac understated the finance charges disclosed in the TILA documents in four ways. First, because the cost of title insurance CMS obtained from TS, $966.00, is almost twice the rate quoted by Chicago Title, $359.85, plaintiff alleges that the cost was not bona fide and reasonable in amount, that it was in fact a disguised mortgage broker fee, and that it should, therefore, have been included in the TILA disclosure documents as a finance charge. Second, because she was charged $49.50 for the recording of the mortgage that actually cost only $45.50 to record,

2

plaintiff alleges there was an undisclosed $4.00 finance charge. Third, plaintiff alleges that because her prior lender actually recorded and paid for the release, the $34.50 IndyMac purportedly charged for recording a release should be included within the finance charges. Finally, plaintiff alleges that $310, listed on the TILA documents as a settlement fee, was actually used for disbursing funds and obtaining signatures, should also have been included as a finance charge. Accordingly, plaintiff claims the finance charges disclosed were understated by $1,004.50.

Plaintiff is entitled to rescind the mortgage only if the finance charges were understated by more than TILA's statutory recision tolerance. In a credit transaction secured by real property, the disclosed finance charge is considered sufficiently accurate so as to preclude rescission if "the amount disclosed as the finance charge does not vary from the actual finance charge by more than the amount equal to one-half of one percent of the total amount of credit extended. 15 U.S.C. § 1605(f). Similarly, Regulation Z directs that a disclosure be considered accurate if understated by no more than "½ of 1% of the face amount of the note or $100 which ever is greater." 12 C.F.R. § 226.23. In the instant case, plaintiff's mortgage note is for a loan of $79,000.00. One half of one percent of $79,000.00 is $395.00. Plaintiff, therefore, claims she can rescind since her calculation of the understatement, $1,004.50, is well outside the tolerance of $395.00.

As this court previously explained when dismissing plaintiff's original complaint, however, only those charges that are unreasonable or spurious are included in the calculation of the finance charge understatement. <u>Scott v. IndyMac Bank, FSB</u>, No. 03 C 6489, 2004 WL 422654, at *2 (N.D. Ill. 2004) (citing <u>Guise v. BWM Mortgage, LLC</u>, 377 F.3d 795, 800 (7th

Cir. 2004)). Accordingly, $359.85, the amount plaintiff alleges is a bona fide and reasonable title expenses, must be deducted from plaintiff's computation, leaving an understatement of $644.65. Id.

Additionally, IndyMac contends that plaintiff has improperly included several other amounts in her calculation of finance charges. Specifically, IndyMac contends that the $200.00 title search fee, the $34.50 release recording-fee, and the $62.00 courier fee originally included as a finance charge on the TILA disclosure, are in fact not finance charges, and that these amounts must be deducted from plaintiff's computation of the underdisclosure.

First, IndyMac points out that the $200.00 paid to Lakeshore, an unrelated company, for a title search is separate and distinct from the fees paid to Title Shield for title insurance. In determining whether a finance charge is within the acceptable TILA tolerance, "[i]t is inconsistent to include the amount paid for a title search with the amount paid for title insurance." Wade v. New Century Mortgage Corp., No. 03 C 7401, 2004 WL 2211617, at *2 (N.D. Ill. 2004) (citing Guise, 377 F.3d at 799). In the present case, plaintiff has not alleged that the title-search fee was unreasonable. Nor has plaintiff claimed the fee was anything but bona fide because plaintiff does not dispute that the fee was in fact used to perform a title search. The $200.00 paid to Lakeshore for the title search is, therefore, properly excluded as a finance charge. Accordingly, plaintiff's calculation of the underdisclosure must be reduced by $200.00 from $644.65 to $444.65.

Second, IndyMac argues that $62.00 paid as a courier fee to Lakeshore cannot be included as a finance charge. Under 15 U.S.C. § 1605(a), fees imposed by third-party agents are not included as a finance charge "if the creditor does not require the imposition of the charges or

the services provided and does not retain the charges." A courier fee paid to an unrelated third party, such as the courier here at issue, falls under this categorization. Thus, while the courier fee was originally included on the HUD-1 and TILA disclosure statements as a finance charge, it must be excluded unless it was required and retained by IndyMac. Bank of New York v. Mann, No. 02 C 9265, 2004 WL 1878293 (N.D. Ill. 2004). As IndyMac points out, plaintiff does not allege that the courier fee was required or retained by IndyMac. In fact, plaintiff's complaint does not mention the courier fee at all, save for its inclusion as a finance charge on the HUD-1 and TILA disclosure statements attached to the complaint as exhibits. Consequently, because both the HUD-1 and TILA statements indicate that the courier fee was paid to Lakeshore, not IndyMac, and do not suggest that the fee was required by IndyMac, plaintiff has failed to allege that the fee should be included as a finance charge.

Deducting the $62.00 fee from $444.65 leaves a total understated finance charge of $382.65, an amount within the tolerance range of $395.00. Plaintiff's complaint, therefore, fails to state a claim against IndyMac under TILA, and Counts I and II are dismissed. Further, because the TILA claim against IndyMac is the only basis for this court's subject matter jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims in Count III. 28 U.S.C. § 1367(c)(3). Count III is accordingly dismissed as well, without prejudice.

## CONCLUSION

For the reasons stated herein, the court grants defendants' motions to dismiss Counts I and II with prejudice and Count III without prejudice.

**ENTER: March 28, 2005**

_____
**Robert W. Gettleman
United States District Judge**